# Casteel et al. v. Heffner et al.

April 23, 1943.

A. T. W. Manning for appellants.

J. R. Llewellyn and R. Ruthenberg for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Prior to December 18, 1939, George Heffner, Sr., died testate, leaving surviving him as his children and heirs the appellant and coplaintiff with her husband, Jesse L. Casteel, and the appellees—all of whom were adults. A part of the estate consists of a tract of land in Jackson County, Kentucky, containing some coal deposits. In testator's will he named his son, J. H. Heffner, as executor and trustee in a trust created by his will embracing the Jackson county land, and empowered his trustee and executor "to sell, transfer, convey or lease" the Jackson county land—and other real estate mentioned by him—"with the written consent of my four children, or as many of them as may be living."

On December 18, 1939, the trustee, with the other

heirs, executed a lease on the Jackson County tract to Casteel and wife, and George Heffner, Jr., and his wife, whereby they were given the privilege to mine coal from the land covered by the lease in consideration of a royalty to be paid, as stipulated in the lease, and pursuant to the terms and obligations assumed therein by lessees. The latter formed a partnership under the name of "Travis Coal Company," and immediately began preparing for excavating coal, as the lease stipulated should be done. Appellant George Heffner, Jr., with his wife, resided somewhere on the leased tract. Neither George Heffner nor his wife possessed any ready cash with which to operate the enterprise, and J. L. Casteel and wife only had a small amount. However, the members of the partnership got together some secondhand facilities for such operation.

George Heffner, Jr., appears to have been delegated the task of superintending the operation of the mine on the ground, but which was not made exclusive; whilst J. L. Casteel kept the books from reports made by his partner and brother-in-law, and he more or less managed the financial affairs of the partnership. Among the obligations assumed by lessees in their lease was, to pay royalty when due, and to prosecute the mining operations with due diligence. The partners disagreed among themselves, and it is charged that each of them forbade the other to come upon the premises, which conditions produced an irreconcilable breach obstructing production, and brought about other violations of the lease contract, the result being that only a small amount of coal was mined. In another stipulation in the lease it was prescribed that upon such violations by the lessees the lessors became entitled, upon given notice, to a forfeiture of the lease. Lessors availed themselves of that provision by giving the necessary notice, and thirty days thereafter expired on November 12, 1940. But on that day at about 11 p. m., Casteel and wife, as members of the lessee partnership, filed this action in the Jackson circuit court against their other two partners, and the other heirs of George Heffner, Sr., seeking a settlement and distribution of the partnership, including the lease asset and to recover judgment against the partners for an alleged indebtedness due plaintiffs and for a lien upon the firm assets to secure it. They also sought and moved for a temporary injunction against the other members

of the partnership from unlawful interference with the possession and operation of the property, and the employees in the prosecution of the mining enterprise. They also asked for a receiver to take charge of the partnership property and to operate it until otherwise ordered by the court.

The court granted the injunction prayed for, and also appointed a receiver to take charge of the property, who qualified and undertook the discharge of his duties. He appears to have made no more success in the production of coal than did the partnership before his appointment. On the contrary, he ran the partnership farther in debt, and neither he nor the lessees ever paid the lessors any royalties.

The material allegations of the petition were denied by the defendants, as was also done by the trustee and all other heirs of George Heffner, Sr. After the unsuccessful effort of the receiver to operate the mine at a profit—either for the partnership or the obtention of royalty for the lessors—defendants entered motion to discharge the receiver and for a judgment forfeiting the lease—both of which were sustained "in so far as it effects the leasehold property herein"; but the receivership of all other property of the lessee partnership remained in force. Neither did the judgment attempt to settle the controverted matters between the members of the partnership, as disclosed by their pleadings. From that judgment appellants prosecute this appeal—their counsel insisting that the leasehold interest of the partnership constituted almost its entire assets, leaving practically nothing from which plaintiffs might collect their claim against the partnership if their alleged debts were later found to be correct.

The argument so advanced by counsel would seem to overlook the fact that the title to the leasehold asset of the partnership was conditioned in the lease, as hereinbefore stated, by the provisions we have stated, and whereby it might be forfeited and cancelled by the lessors for violation of such conditions by taking the necessary steps therefor—all of which the record clearly shows was done by lessors. It is true that this action was filed on the last day—and nearly the last hour—before the forfeiture could take effect; but the lease does not require that the thirty days' notice should expire before the

*right* of forfeiture accrues. It only provides that the forfeiture which accrued upon the specified failure to develope the lease in the manner provided for should not *take effect* until the expiration of the thirty days after giving the notice. If, however, counsel was correct in his interpretation that the forfeiture did not accrue until the expiration of the thirty days, then we are of the opinion that the filing of the action at 11 p. m. on the last day should not prevent the forfeiture or preserve the title to the lease in the lessees, since no sufficient time following the filing of the action at that hour would remain in which the required development could be made.

According to the pleadings (no evidence being taken in the case) the right of forfeiture of the lease had accrued before the appointment of the receiver, by which lessors became entitled to be restored to the title thereto upon the giving of the required notice, thirty days from which the forfeiture became complete. It might have been proper that other assets of the partnership should be placed in the hands of the receiver; but that question is not before us. Therefore, the only question presented is, whether or not the court correctly adjudged the forfeiture of the lease and the discharge of the receivership covering it?

From the foregoing facts, which indisputably appear from the record, the court was without authority to place the lease asset in the hands of a receiver, since because of the facts stated it had ceased to be an asset, and which was brought about by the defalcations of the lessees in not complying with the terms of their lease. However, such appointment was made on ex parte application therefor, which the lessors later moved the court to set aside and discharge the receiver. The sustaining of that motion was clearly correct under the facts disclosed, notwithstanding it may have reduced the assets of the lessors' partnership to such an extent as to render it insolvent and, therefore, incapable of discharging the obligations of the partners as between themselves.

Wherefore, for the reasons stated, the judgment is affirmed.